# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **MICHAEL LIRETTE, ET AL.** | **CIVIL ACTION NO. 3:18-cv-00527** |
| **VS.** | **JUDGE TERRY A. DOUGHTY** |
| **BANK OF NEW YORK MELLON,** | **MAG. JUDGE KAREN L. HAYES** |
| **ET AL.** | |

<u>**RULING**</u>

Pending here are cross motions for summary judgment. The first is a Motion for Summary Judgment, and, in the Alternative, Motion to Dismiss Fraud Claim Pursuant to Rule 9(b) [Doc. No. 29] filed by Defendants, The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificate Holders of the CWABS, Inc., Asset-Backed Certificates, Series 2006- 22 ("BNY") and Specialized Loan Servicing, LLC ("SLS") [Doc. No. 29]. Plaintiffs Michael and Lisa Lirette (collectively "Plaintiffs") filed an opposition [Doc. No. 34]. Defendants BNY and SLS filed a reply to the opposition [Doc. No. 37].

The second is Plaintiffs' Motion for Summary Judgment [Doc. No. 35].  Defendants BNY and SLS filed an opposition [Doc. No. 45].  Defendant Bank of America, N.A. ("BOA"), filed an opposition [Doc. No. 52]. Plaintiffs filed a reply to the oppositions [Doc. No. 56].

Defendant BOA has not filed a motion for summary judgment.

For the following reasons, Defendants BNY and SLS's motion [Doc. No. 29] is GRANTED IN PART and DENIED IN PART.  Further, Plaintiffs' motion [Doc. No. 35] is DENIED.

## I.      FACTS AND PROCEDURAL HISTORY

Plaintiffs executed an Adjustable Rate Note (the "Note") in favor of Countrywide Home Loans, Inc., dated November 17, 2006, in conjunction with their purchase of certain property located at 111 Lincoln Ridge Circle, Monroe, Louisiana 71203-8876 (the "Property").  The Note provides that Plaintiffs are obligated to, among other things, make payments of principal and interest on the first calendar day of each month until the Note is paid in full.  The initial interest rate under the Note is 11.875% and that rate is subject to periodic adjustments based on changes in the average of interbank-offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR") as published in the *Wall Street Journal*. The Note provides that if any payment is not made within fifteen (15) days of when such payment is due, Plaintiffs shall pay to Lender a late fee equal to 5% of the overdue payment of principal and interest.

To secure the prompt payment of the amounts due under the Note, Plaintiffs granted a mortgage on the Property (the "Mortgage"), with power of sale, to Mortgage Electronic Payment Systems, Inc. ("MERS"), solely as nominee for Lender, its successors and assigns. BNY subsequently obtained all rights and interests under the Note and Mortgage.

In 2011, Plaintiffs became delinquent under the terms of the Note for failing to make the required monthly payments on a timely basis. On or about July 7, 2011, BNY initiated foreclosure proceedings by filing a Petition for Executory Process in the 4th Judicial District Court for the Parish of Ouachita (the "Foreclosure Action").  Prior to the foreclosure sale, the Sheriff had the Property appraised in accordance with Louisiana Code of Civil Procedure Article 2223.  The appraiser determined that the Property had a value of $300,000.

The foreclosure sale occurred on the morning of September 28, 2011. BNY was the successful bidder, making a credit bid in the amount of $200,000. On the date of the foreclosure

sale, the amount due and owing by Plaintiffs under the Note exceeded $200,000. BNY paid court costs associated with the foreclosure sale in the amount of $7,003.98, and the balance of the bid, the sum of $192,996.02, was retained as a credit on the Writ of Seizure and Sale. As the Property sold with appraisal, the winning bid was at least two-thirds (2/3) of the Property's appraised value. The proceeds from the foreclosure sale did not satisfy Plaintiffs' obligations under the Note, making BNY entitled to pursue a deficiency against Plaintiffs.

However, unaware that the foreclosure sale had occurred earlier that morning, Plaintiffs filed a Chapter 13 Bankruptcy proceeding on the afternoon of September 28, 2011, in an effort to forestall the foreclosure sale. Thereafter, Plaintiffs remained living on the Property, and all parties proceeded as if the foreclosure sale did not occur. On December 16, 2011, BOA transferred the servicing of the Note and Mortgage to SLS. Plaintiffs' bankruptcy action was dismissed on June 10, 2013.

On or about August 2014, Plaintiffs applied for a loan modification with SLS. On February 17, 2015, Plaintiffs executed a Home Affordable Modification Agreement (the "Modification Agreement"), which modified certain of the payment terms of the Note. Pursuant to the Modification Agreement, the Note's Maturity Date was adjusted to March 1, 2055, the interest rate was reduced from an adjustable rate of 11.875% to a fixed rate of 4.00%, and the outstanding principal balance was adjusted to include all amounts in arrearages that existed as of the time of the Modification.

According to Defendants, the new principal balance on the Note, when the arrearages were added to the outstanding principal balance, totaled $388,561.49, and Plaintiffs' monthly payment obligation for principal and interest decreased from $2,729.90 to $1,623.94.

Plaintiffs, on the other hand, now contend there was no principal balance on the Note,

and, in fact, they had overpaid the note.

In the Modification Agreement, Plaintiffs agreed that the Note and Mortgage, as modified by the Modification Agreement, "are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed." [Doc. No. 29-2, at Section 4(E)]. Plaintiffs further agreed that all of the terms of the Note and Mortgage, "except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be satisfaction or released in whole or in part of the obligations contained in the [Note and Mortgage]; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound and will comply with, all of the terms and conditions of the [Note and Mortgage]." [*Id*., at Section 4(F)].

At some time prior to August 16, 2016, Plaintiffs determined that the foreclosure sale actually did occur on September 18, 2011, and that BNY was actually the titled owner of the Property as evidenced by the Sheriff's Deed. [Doc. No. 1-1, at ¶¶ 24-26]. Plaintiffs acknowledged by letter dated January 25, 2017, that they were fully aware that the foreclosure sale occurred on September 28, 2011; that BNY bought the Property at the foreclosure sale; and that BNY was the titled owner of the Property.  [Doc. No. 29-2, p. 57].

Defendants contend that, in an effort to unwind the foreclosure sale and vest title to the Property back to Plaintiffs, BNY filed an *ex parte* motion in the Foreclosure Action on May 23, 2017, seeking to rescind the Sheriff's sale. On June 1, 2017, the State Court granted BNY's motion and issued an Order rescinding the Sheriff's sale.

Plaintiffs continued to live on the Property until January 2018.  Plaintiffs made monthly payments due under the Note, as modified by the Modification Agreement, through the payment due on May 1, 2019, and the Note, as modified by the Modification Agreement, is currently due

for the June 1, 2019 payment.

On March 14, 2018, Plaintiffs filed this lawsuit in the 4th Judicial Court for the Parish of Ouachita, which Defendants timely removed to this Court. In their Petition, Plaintiffs seek a Declaratory Judgment that: (1) the Mortgage is extinguished by confusion, (2) the Modification Agreement be deemed an absolute or relative nullity, and (3)  Plaintiffs are entitled to reimbursement of all amounts paid on the Note after the September 28, 2011 foreclosure sale. Plaintiffs also seek damages they allegedly sustained as a result of entering into the Modification Agreement, asserting claims of fraud, fraudulent inducement, gross negligence, bad faith, breach of the alleged duty of good faith and fair dealing, conversion, violations of the Louisiana Unfair Trade Practices Act ("LUTPA"), breach of fiduciary duty, and violations of the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq. Plaintiffs also seek recovery of attorneys' fees and costs.

Additionally, on March 14, 2018, Plaintiffs filed a motion in the Foreclosure Action seeking to set aside the Order which rescinded the foreclosure sale. On June 15, 2020, the State Court issued a Judgment granting the Plaintiffs' motion and setting aside the June 1, 2017 Order which had rescinded the foreclosure sale.

Pursuant to the State Court's June 15, 2020 Judgment, BNY is the titled owner of the Property by virtue of the Sheriff's Deed, and the Mortgage on the Property was extinguished by confusion. The parties are in agreement that the first issue on which Plaintiffs seek a declaratory judgment, i.e.,  issue of whether the Mortgage was extinguished by confusion on the date of the foreclosure sale, is now moot, as the state court has ruled that the Mortgage was extinguished.

In sum, Plaintiffs argue the Modification Agreement is an absolute or relative nullity, they are entitled to a return of all amounts paid to BNY post-foreclosure sale, and that they are

entitled to damages based on the various theories listed above.

Defendants assert that all of Plaintiffs' claims are premised on the incorrect belief that by virtue of the foreclosure sale, they no longer had any obligations under the Note. Concerning Plaintiffs' state law damages claims, Defendants argue they are all prescribed with the exception of the breach of fiduciary duty claim.

In their response, Plaintiffs have withdrawn their claims against Defendants under LUTPA and their claim for breach of fiduciary duty.  [Doc. No. 34, p. 27].

As indicated above, Defendants BNY and SLS have filed a motion for summary judgment, and Plaintiffs, too, have filed a motion for summary judgment.  The motions for summary judgment are fully briefed, and the Court is prepared to rule. [1]

## II.    LAW AND ANALYSIS

### A.    Summary Judgment

Summary judgment Ashall [be] grant[ed] . . .  if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.@  Fed. R. Civ. P. 56(a).  A fact is Amaterial@ if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is Agenuine@ if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial.  *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  The nonmoving party must show more than Asome

---

[1] On December 11, 2020, Defendants BNY and SLS filed a counterclaim against Plaintiffs for amounts due under the Note as modified, amounts due under the original Note, and unjust enrichment [Doc. No. 33].  This ruling does not address the counterclaim.

metaphysical doubt as to the material facts.@ *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

       **B.**    **Analysis**

The Court will first summarize the contentions of the parties.  The Court will then address Plaintiffs' requests for declarative judgment, Plaintiffs' state-law damage claims, Plaintiffs' RESPA claims, and Plaintiffs' request for attorney fees and costs.

          **1.**    **Defendants' Contentions**

              **i.**    **Defendants BNY and SLS.**

In their motion for summary judgment, BNY and SLS assert that, throughout the Petition, Plaintiffs conflate the Note and Mortgage when in fact, they are separate and distinct contracts. Further, each of Plaintiffs' state law claims are fatally flawed because Plaintiffs do not recognize the distinct nature of the Note and Mortgage, their obligations under each, the impact of the foreclose sale on those contracts, and finally, the validity of the Modification Agreement in spite of the foreclosure sale.

BNY and SLS state that, pursuant to the Note, Plaintiffs agreed to make monthly principal and interest payments until the Note is paid in full and agreed that the outstanding principal balance would accrue interest at a variable rate, initially set at 11.875% and subject to periodic adjustments based on changes in LIBOR. The Mortgage, on the other hand, is the Lender's security in the event that Plaintiffs do not satisfy their payment obligations under the Note. Pursuant to Louisiana law, the Mortgage is an accessory to the obligation that it secures. Although a mortgagee may only enforce a Mortgage to the extent that he may enforce any obligation it secures, the inverse is not

true. Because the Mortgage is an accessory obligation of the Note, the fact that the Mortgage is extinguished has no impact on the validity and enforceability of the Note.

BNY and SLS argue that, consequently, the entire premise of Plaintiffs' lawsuit, namely, that by virtue of the foreclosure sale they were no longer obligated under the Note, that they should recover amounts they paid on the Note post-foreclosure sale, and that the Modification Agreement is a nullity, is fatally flawed. Plaintiffs' claims are based on a fundamental misunderstanding of their obligations under the Note and Mortgage and the fact that, even if the Mortgage is extinguished, they are still obligated under the Note. Because the Note survived the foreclosure sale, Plaintiffs and BNY had every right to enter into the Modification Agreement.

According to BNY and SLS, at the time of the Modification Agreement, the new principal balance on the Note, when the arrearages were added to the outstanding principal balance, totaled $388,561.49

Concerning Plaintiffs' state law damages claims, BNY and SLS argue they are all prescribed with the exception of the breach of fiduciary duty claim, which Plaintiffs have withdrawn. Further, the undisputed facts establish that Defendants did not violate 12 U.S.C. §2605 and that Plaintiffs have no contractual or legal rights to recover their attorneys' fees and costs. Finally, Plaintiffs' state law damages claims are flawed as they are each premised on the incorrect assumption that Plaintiffs' obligations under the Note were extinguished by the foreclosure sale. For these reasons, Defendants BNY and SLS assert that all of Plaintiffs' claim should be dismissed with prejudice.

In the alternative, BNY and SLS seek dismissal of Plaintiffs' fraud and fraudulent inducement claims for failure to meet the requirements of Federal Rule of Civil Procedure 9(b).

### ii.       Defendant BOA

Defendant BOA has not filed a motion for summary judgment. However, BOA has filed an opposition to Plaintiffs' motion for summary judgment to the extent that Plaintiffs seek judgment as a matter of law against it.

BOA contends that its only involvement in this case was that, on or about March 16, 2016, the servicer for the Note and Mortgage was changed from SLS to BOA, and then, effective December 16, 2016, the loan was transferred back to SLS for servicing.  BOA further contends that Plaintiffs' claims for declaratory relief pertain only to SLS and BNY, and, therefore, BOA does not address those claims in its opposition.

With regard to Plaintiffs' other claims, BOA asserts that Plaintiffs allege that on or about December 28, 2016, they were informed that BOA advised SLS of the "title issue" raised by Plaintiffs. BOA has not serviced the loan at issue since December 15, 2016; therefore, according to BOA, any and all claims against it must be dismissed as prescribed, as Plaintiffs did not initiate this litigation until March 21, 2018 – more than one year after BOA had any role in the servicing of their loan.

Additionally, BOA contends that Plaintiffs' RESPA claim against it fails because Plaintiffs have  not shown they submitted to BOA a Qualified Written Request (QWR), and Plaintiffs have neither alleged nor established that there was any "pattern or practice of noncompliance with the requires of the section" or that they have sustained, or are entitled, to damages.

### 2.       Plaintiffs' Contentions

As indicated above, Plaintiffs have withdrawn their claim against all Defendants under LUTPA, La. R.S. 51:1406(1). [Doc. No. 34, p. 27]. Plaintiffs also have withdrawn their specific claim for breach of fiduciary duty against Defendants.  [*Id.*] Plaintiffs reserve all other claims.

In their opposition to Defendants BNY and SLS's motion for summary judgment, and in their own motion for summary judgment, Plaintiffs assert that Defendants have been paid to date a total of at least $296,557.72 since the foreclosure on the subject property. Further, Defendant BNY owns the Property by virtue of the September 28, 2011 foreclosure sale, and the Property has a tax assessed value of $274,970.00 and a fair market value likely higher than that. Yet, even with ownership of the subject property in the hands of Defendant BNY, Defendants continue to assert that Plaintiffs still owe them another $370,000.00-plus in principal, plus interest, and have even gone so far as to file a counterclaim herein to that effect.

As stated above, the parties are in agreement that, as a result of the foreclosure sale, the Mortgage was cancelled, and only the Note remained in place. The Note was subject, however, to a credit for the net amount of the foreclosure sale less expenses, i.e., $192,996.02. Plaintiffs assert that the amount of the mortgage insurance claim that was filed by Defendants on December 8, 2011, identified the total amount owed as $339,998.77. Subtracting from that amount the amount of deficiency on the Note at that time based upon the credit for the net amount of the foreclosure sale less expenses ($192,996.02) left a remaining balance of $147,002.75.

Plaintiffs state that, on March 29, 2012, the mortgage insurer, United Guaranty, remitted payment on the mortgage insurance claim to SLS in the amount of $124,660.34. According to Plaintiffs, this amount should serve as a credit to reduce the obligation owed under the Note. Calculating interest under the Note at the rate of 11.875 percent annually on the remaining balance of $147,002.75 from September 28, 2011, to March 29, 2012, comes to an approximate total of $8,728.28. As a result, effectively as of March 29, 2012, calculating the previous deficiency on the Note owed by Plaintiffs ($147,002.75), plus accrued interest of $8,728.28, less credit for the

payment of $124,660.34 by United Guaranty to SLS, left a remaining deficiency of approximately $31,070.69 as of March 29, 2012, according to Plaintiffs..

Additionally, Plaintiffs had an ongoing Chapter 13 bankruptcy matter, which they had filed on September 28, 2011, the same day as the foreclosure sale, but after the sale had occurred, in what ultimately was a failed attempt to stave off the foreclosure sale. Plaintiffs state that, by the conclusion of that Chapter 13 bankruptcy matter on March 4, 2013, Defendant BNY had accepted payments from the Chapter 13 bankruptcy trustee of amounts totaling $61,668.14.

Calculating interest under the Note at the rate of 11.875 percent annually on the prior remaining deficiency balance of $31,070.69 from March 29, 2012, through March 4, 2013, comes to an approximate total of $3,689.64, according to Plaintiffs. As a result, effectively as of March 4, 2013, calculating the previous deficiency on the Note owed by Plaintiffs ($31,070.69), plus accrued interest of $3,689.64, less credit for the payment of $61,668.14 by Plaintiffs via the bankruptcy trustee, there was a *surplus* of remaining deficiency (i.e., overpayment) of approximately $26.907.81. Plaintiffs thus conclude that the entire promissory note obligation had been fully satisfied, and, the Note was, thereby, extinguished.

Plaintiffs assert that, nevertheless, BNY and its mortgage and note servicers continued to charge Plaintiffs principal and interest under the Mortgage and Note that had been either extinguished by confusion (i.e., the Mortgage) or by performance (i.e., the Note), based upon false and inaccurate calculations. They continued to do so through false and inaccurate monthly statements to be paid, under threat of foreclosure and filing of negative reports with credit reporting agencies.  From March 4, 2013, through February 17, 2015, BNY and SLS received additional payments directly from Plaintiffs of amounts totaling not less than $6,847.40.  Adding that total to the previous $26,907.81 surplus results in a total surplus of $33,755.21.

Plaintiffs further assert that SLS repeatedly approached them about a loan modification. On or about February 17, 2015, Plaintiffs signed the Modification Agreement.  However, Plaintiffs assert that, in the fine print, SLS clandestinely purported to increase the principal amount owed by Plaintiffs to BNY to $388,561.49, on a property they did not own, and for a mortgage that had been extinguished by confusion, and for a promissory note that had been essentially extinguished by performance, and after BNY and SLS had received at least $33,755.21 on top of that performance.

Nevertheless, Defendants continued to demand and accept payments from Plaintiffs under the guise of this purported Modification Agreement for an extinguished Mortgage and Note. Since February 17, 2015, Plaintiffs have remitted additional payments to Defendants in an amount of at least $103,381.84. Adding that amount to the previous surplus ($33,755.21) results in a total approximate surplus of at least $137,137.05.  And, BNY has ownership of the Property.

Plaintiffs conclude that BNY continues to assert that they still owe it more than $370,000.00 in principal plus interest, via its recently filed counterclaim in an effort to keep them bound to an illegitimate Modification Agreement. Further, BNY seeks to imprison them in indentured servitude for perhaps the rest of their lives, barring the filing of another bankruptcy. Plaintiffs state they deserve to break the bonds of these chains latched onto them by the actions of Defendants over the course of nearly a decade and move on with their lives.  They further deserve to be properly compensated for their losses.

With regard to BNY and SLS's alternative motion to dismiss under Rule 9(b), Plaintiffs assert that Louisiana is a "fact pleading" state, that they originally filed in state court but the case was removed to this Court, and that all reasonable inferences should be resolved in their favor.

3.      **Court's Analysis**

a.      **Plaintiffs' Requests for Declaratory Judgments**

Plaintiffs are seeking a declaratory judgment that the Modification Agreement be deemed an absolute or relative nullity.  Plaintiffs further seek a declaratory judgment that they are entitled to reimbursement of all amounts paid on the Note after the September 28, 2011, foreclosure sale.

The parties are in total disagreement as to whether Plaintiffs owed a balance on the Note at the time of the Modification Agreement. Defendants contend there was a balance of $388,561.49, at the time of the Modification Agreement.  Plaintiffs, on the other hand, contend they had overpaid the Note by at least $33,755.21, at the time of the Modification Agreement, and, further, they have overpaid the Note by at least $137,137.05 since then.

Neither Plaintiffs nor Defendants have produced sufficient summary judgment evidence to support their respective motions. They have produced little more than attorney arguments. There are no spreadsheets and no affidavit from a CPA or any other expert.  Neither side has produced evidence that would assist the Court in unravelling this complicated series of financial events. Further, there is nothing to show how much of Plaintiffs' payments was applied to the Note, and how much was applied to other charges, such as escrow payments for property insurance or property taxes.

This factual situation is made even more confusing by the fact that neither side behaved as if the foreclosure sale had actually occurred.  Then, after Defendants acted to "unwind" the foreclosure sale and place the Property back into Plaintiffs' names, Plaintiffs acted to "unwind" the "unwinding" of the foreclosure sale and place the Property back into the name of BNY.

Further, even if the Court were to grant summary judgment in favor of Plaintiffs declaring that the Modification Agreement is an absolute or relative nullity, the effect of such a finding

would merely be to restore the parties to the situation that existed before that contract was made. The parties are in total disagreement as to whether there was a balance owed on the Note at that time, or at any time since.

The Court finds that no party has established its entitlement to summary judgment with regard to Plaintiffs' demands for declaratory judgments.   There are genuine issues of material fact which the factfinder will be tasked with resolving.

Accordingly, to the extent Defendants BNY and SLS seek summary judgment denying Plaintiffs' requests for declaratory judgment, that motion is DENIED.   Similarly, to the extent Plaintiffs seek summary judgment granting their requests for declaratory judgment, their motion is DENIED.

### b.        Plaintiffs' State-law Damage Claims

### i.        Plaintiffs' Claims against BNY and SLS

In their respective motions, Plaintiffs and Defendants BNY and SLS, seek judgment as a matter of law in their favor on Plaintiffs' state-law damage claims against BNY and SLS.

BNY and SLS contend that Plaintiffs' state-law damage claims sounding in fraud, fraudulent inducement, gross negligence, bad faith, breach of alleged duty of good faith and fair dealing, and conversion, are all prescribed because each of these claims is subject to a one-year prescriptive period.   BNY and SLS contend, in the alternative, that these claims have no basis in law or fact.

BNY and SLS argue that it is evident from the face of the Petition that at some time prior to August 16, 2016, Plaintiffs determined that the foreclosure sale occurred on September 28, 2011, and that BNY was the titled owner of the Property as evidenced by the Sheriff's Deed. [Doc. No. 1-1, ¶¶ 24-26]. Additionally, Plaintiffs acknowledged by letter dated January 25, 2017, that

they were fully aware that the foreclosure sale occurred on September 28, 2011, that BNY bought the Property at the foreclosure sale, and that BNY was the titled owner of the Property. [Doc. No. 29-2, at ¶ 15]. Yet Plaintiffs waited until March 14, 2018, to file their lawsuit. BNY and SLS assert that, as a result, Plaintiffs' claims are all prescribed because each of these claims is subject to a one-year prescriptive period.

Plaintiffs respond that this action at its essence is centered around contract, i.e., the Note, the Mortgage, and the Modification Agreement.  Therefore, this is an action based on contract, which is subject to a liberative prescription of ten years.  LA. CIV. C. art. 3499. Plaintiffs further respond that, *although not specifically pleaded as such*, their allegations support a contractual claim for payment of a thing not owed, which also has a ten-year prescriptive period.  LA. CIV. C. art. 2299. Additionally, Plaintiffs contend that they have alleged facts supporting a suit on a promissory note, which has a five-year prescriptive period.  LA. CIV. C. art. 3498.  They also state they have alleged facts supporting a suit for breach of the contractual obligations of good faith and fair dealing, which they state has a ten-year prescriptive period.  Finally, they state they have alleged general damages pursuant to continuing torts including conversions and gross negligence, which are subject to a one-year prescriptive period from the date of the last act constituting harm pursuant to that continuing tort.

BNY and SLS reply that Plaintiffs are attempting to inject new causes of action into their Petition, that those causes of action are not before this Court, and those causes of action have no bearing on the pending motion.

The Court agrees. BNY and SLS are seeking summary judgment on Plaintiffs' state-law damage claims sounding in fraud, fraudulent inducement, gross negligence, bad faith, breach of alleged duty of good faith and fair dealing, and conversion, Defendants' motion addressed each

cause of action delineated in the Plaintiffs' Petition. All that is properly before the Court on this motion is whether those causes of action can survive summary judgment.

When a response to a motion for summary judgment relies on new theories of liability or factual allegations, dismissal may be proper, based on the fact that the complaint did not provide "fair notice of what the claim is and the grounds upon which it rests." *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99 (2009)).

Nor do Plaintiffs' arguments concerning these yet to be presented causes of action have any bearing on whether the causes of action asserted in the Petition are prescribed. In short, Plaintiffs' attempt to assert new causes of action through their opposition is procedurally flawed, those causes of action are not before this Court, and those causes of action have no bearing on the pending motion.

The Court further finds that Plaintiffs' claims have prescribed.  Fraud, fraudulent inducement, gross negligence, bad faith, breach of alleged duty of good faith and fair dealing, and conversion, are all delictual actions. "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." LA. CIV. C. art. 3492. "Damage is considered to have been sustained, within the meaning of the article [3492], only when it has manifested itself with sufficient certainty to support accrual of a cause of action."  *Klein v. Am. Life & Cas. Co.*, 858 So. 2d 527, 532 (La. App. 1 Cir. 06/27/03), citing, *Campo v. Correa*, 828 So. 2d 502, 510-511 (La. 6/21/02).

Plaintiffs have alleged that they were damaged by entering into the Modification Agreement and by making payments under the Modification Agreement, all because BNY had acquired the property at foreclosure sale. Yet, as noted above, Plaintiffs were well aware of this

16

act by January 25, 2017, at the latest but waited until March 14, 2018, to file this lawsuit. Consequently, Plaintiffs state law delictual claims are all prescribed.

With regard to Plaintiffs' continuing tort theory, the allegations of the Petition indicate that each of Plaintiffs' claims was perfected when the Loan Modification was executed; therefore, there are no "continuing" acts at issue here. Plaintiffs have admitted that more than one year prior to filing this lawsuit, they were aware that the foreclosure sale occurred and that BNY was the titled owner of the Property.  Once Plaintiffs had actual knowledge of these facts which form the basis of their delictual claims, they had one year to file suit, which they failed to do. Even assuming a claim may have existed at one time, it would have prescribed, at the latest, on January 25, 2018, and this suit was not filed until March 14, 2018.

For the reasons set forth above, the Court finds that, as to Defendants BNY and SLS, Plaintiffs' fraud, fraudulent inducement, gross negligence, bad faith, breach of alleged duty of good faith and fair dealing, and conversion claims, are all prescribed.[2] Accordingly, Plaintiffs' motion for summary judgment in their favor on these claims is DENIED. Further, Defendants BNY and SLS's motion for summary judgment is GRANTED, and these claims against BNY and SLS are DISMISSED WITH PREJUDICE.

### ii.    Plaintiffs' State-law Claims against BOA

Plaintiffs have requested damages against BOA based upon the same multiple tort claims under state law, including fraud, fraudulent inducement, gross negligence, bad faith, breach of an alleged duty of good faith and fair dealing, and conversion. As noted above, Plaintiffs learned of the basis of their claims in January 2017, at the latest, yet they waited until March 18, 2018 to

---

[2] Having so concluded, the Court need not address Defendants' alternative argument that these claims have no basis in law or fact.

initiate litigation against BOA. Plaintiffs have already voluntarily withdrawn their claims for unfair trade practices and breaches of fiduciary duties.

Each of the state law claims supporting a request for general damages against BOA is a delictual claim subject to a one-year prescriptive period that commences from the day injury or damage is sustained. LA. CIV. C. art. 3492. Plaintiffs point to their entering into the Modification Agreement with SLS and BNY in February 2015 as the basis for their damages. It is undisputed that BOA has not serviced the loan since December 15, 2016 – after the Modification Agreement was entered into--and after the time that Plaintiffs admit that they knew of the title issue. Therefore, any delictual claims against BOA must have been brought by December 15, 2017 to be viable. Plaintiffs did not file suit until over a year later, and, therefore, those claims, as to BOA, have all prescribed. Additionally, to the extent Plaintiffs' claim against BOA for attorney fees is based upon any of their delictual claims, such as fraud, those claims also fail.

Accordingly, for these reasons, Plaintiffs' motion for judgment as a matter of law on their state law claims against BOA is DENIED.  BOA has not filed its own motion for summary judgment.

### c.      Plaintiffs' RESPA Claims

### i.      RESPA Claims against BNY and SLS

Plaintiffs, and Defendants BNY and SLS, all seek judgment as a matter of law in their favor on Plaintiffs RESPA claims.  Defendants BNY and SLS assert that, in their RESPA claim, Plaintiffs merely state that they seek "statutory damages pursuant to 12 U.S.C. § 2605," but fail to specifically identify how Defendants allegedly violated that statute. [Doc. No. 1-1, at ¶ 51]. RESPA "provides an action for damages against mortgage loan servicers who fail to respond to certain types of inquiries from borrowers," namely, a Qualified Written Request ("QWR").

*Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 663 (9th Cir. 2012). RESPA "does not require a servicer to respond to any question that a borrower may ask-no matter how broad, vague, or far afield." *De Vary v. Countrywide Home Loans, Inc.,* 701 F. Supp. 2d 1096, 1106 (D. Minn. 2010). To constitute a valid QWR, a request must be a written correspondence from the borrower to the servicer that "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the [Mortgage Loan] servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii).  Further, to be valid, the QWR must seek information related to the servicing of the loan. 12 U.S.C. § 2605(e)(1)(A).

Pursuant to RESPA, if a borrower sends its mortgage loan servicer a proper QWR, the servicer must acknowledge receipt of the QWR within 5 business days of receipt [12 U.S.C. § 2605(e)(1)(A)] and, within 30 business days of receipt, must either correct the account or provide the customer with a written explanation of why the servicer believes the account is correct [12 U.S.C. § 2605(e)(2)(B)] or why the "the information requested is unavailable or cannot be obtained." [12 U.S.C. § 2605(e)(2)(C).

Defendants BNY and SLS argue that, here, Plaintiffs' only allegations that may implicate RESPA is their contention that they sent a letter to SLS dated January 25, 2017 [Doc. No. 1-1, at ¶ 31] which SLS received on February 6, 2017. [Doc. No. 29-2, at ¶ 15]. SLS specifically denies that this letter was a proper QWR but, even if it were, SLS argues it did not violate RESPA. Plaintiffs allege that SLS responded to their letter on February 7, 2017, [Doc. No. 1-1, at ¶ 32], thereby establishing that SLS satisfied the 5-business day acknowledgment requirement of §2605(e)(1)(A). Plaintiffs also allege that SLS responded to their letter on March 21, 2017, [Id., at ¶ 34], thereby establishing that SLS satisfied the 30-business day response requirement of

§2605(e)(2)(C). In the March 21, 2017 letter, SLS advised that it needed an additional 15 business days to respond, which Plaintiffs acknowledge that SLS did by letter dated April 11, 2017. [*Id*., at ¶¶ 34, 35]. Consequently, Defendants assert that Plaintiffs' own allegations establish that SLS did not violate RESPA and this claim should be dismissed.

Additionally, Defendants contend that Plaintiffs have not alleged that they sustained actual damages as a result of Defendants' alleged violation of RESPA but have merely sought statutory damages. [Id., at ¶ 51]. "To seek statutory damages under §2605, [a] Plaintiff must allege facts showing that there is a pattern or practice of noncompliance with the requirements of the section." *Farson v. Carrington Mortgage Servs., LLC*, 8:13-CV-2289-T-33TGW, 2013 WL 5705565 (M.D. Fla. Oct. 18, 2013), citing *Correa v. BAC Home Loans Serv. LP*, No. 6:11–cv–1197–Orl–22DAB, 2012 WL 1176701, at *8. Plaintiffs have not alleged any facts to establish "a pattern or practice of noncompliance with the requirements of this section" of RESPA by Defendants. Therefore, Defendants assert that Plaintiffs are not entitled to statutory damages in this case and their RESPA claim should be dismissed.

Plaintiffs respond that, with regard to their January 25, 2017 letter, SLS violated RESPA when, in its March 21, 2017 response letter, SLS sought an additional 15-business days to respond. Plaintiffs contend that the statute only permits a 15-calendar day extension and, therefore, contend that SLS's April 11, 2017 response was not timely, resulting in a RESPA violation.

The Court disagrees.  RESPA's implementing regulation is known as Reg. X. [12 C.F.R. § 1024.1, *et seq*.] Mortgage servicing is covered in Subpart C of Reg. X. [12 C.F.R. § 1024.30 – 1024.41]. As it pertains to mortgage servicing, Reg. X defines "Day" as a "calendar day." [12 C.F.R. § 1024.31]. Significantly, however, Reg. X provides that the servicer may extend the 30-day period to respond to a QWR "by an additional 15 days (excluding legal public holidays,

Saturdays, and Sundays) if, before the end of the 30-day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing." [12 C.F.R. § 1024.35(e)(3)(ii)] Consequently, as it pertains to a request for an extension of the 30-day response deadline, SLS's request was appropriate pursuant to Reg. X, and SLS complied with RESPA by responding on April 11, 2017.

Plaintiffs also contend that SLS violated RESPA in its letter dated April 11, 2017, by seeking another 60 to 90 days to address "reconveyance and vesting of title" issues.

The Court disagrees. To be valid, the QWR must seek information related to the servicing of the loan. 12 U.S.C. § 2605 (e)(1)(A); *see also Bray v. Bank of Am.*, No. 1:09-CV-075, 2011 WL 30307, *12 (D. N.D. Jan. 5, 2011) (dismissing RESPA claim where communications sent to defendants challenge only validity of loan and accused defendants of various statutory violations, but did not relate to "servicing" of the loan as that term is defined by RESPA); *Gates v. Wachovia Mortg., FSB*, No. 2:09-cv-02464–FCD/EFB, 2010 WL 2606511, *3 (E.D. Cal. June 28, 2010) (noting that courts routinely interpret 12 U.S.C. § 2605 as requiring QWR to relate to servicing of loan).

Under RESPA, "servicing" is defined as follows:

> The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

In its April 11, 2017 letter, SLS responded to the questions pertaining to the servicing of the loan. Seeking additional time to respond to non-servicing questions pertaining to "reconveyance and vesting of title" issues does not implicate RESPA. In sum, Plaintiffs have failed to establish that SLS's April 11, 2017 response was inadequate or that SLS violated RESPA.

21

Finally, in their Petition and in their opposition, Plaintiffs neither contended nor established that they sustained actual damages as a result of SLS's alleged violation of RESPA but have merely sought statutory damages. [Doc. No. 1-1, at ¶ 54; Doc. No. 34]. "To seek statutory damages under §2605, [a] Plaintiff must allege facts showing that there is a pattern or practice of noncompliance with the requirements of the section." *Farson v. Carrington Mortgage Servs., LLC,* 8:13-CV-2289-T-33TGW, 2013 WL 5705565 (M.D. Fla. Oct. 18, 2013), *citing Correa v. BAC Home Loans Serv. LP,* No. 6:11–cv–1197–Orl–22DAB, 2012 WL 1176701, at *8.

Plaintiffs have not alleged any facts to establish "a pattern or practice of noncompliance with the requirements of this section" of RESPA by SLS. Therefore, Plaintiffs are not entitled to statutory damages in this case.

For the above reasons, Plaintiffs' motion for summary judgment as to their RESPA claims against Defendants BNY and SLS is DENIED.  Further, BNY and SLS's motion is GRANTED, and Plaintiffs' RESPA claims against BNY and SLS are DISMISSED WITH PREJUDICE.

## II.     RESPA Claims against BOA

 Plaintiffs allege they sent BOA a letter dated August 16, 2016, expressing concerns with the account due to problems with the title to the property related to the sheriff sale [Doc. No. 35-17].  In response, BOA sent Plaintiffs a letter dated August 29, 2016, advising it had received the correspondence on August 22, 2016, and stating that Plaintiffs' concerns require further detailed analysis. [Doc. No. 35-23, p. 2].

BOA sent Plaintiffs another letter dated September 29, 2016, stating that it was in the process of obtaining additional information and requesting an additional 15 business days to respond. [*Id.*, p. 3].

Plaintiffs allege BOA sent another letter dated November 28, 2016, stating that the servicing of the mortgage was being transferred back to SLS.  BOA sent another letter dated December 28, 2016, advising that SLS had been contacted "regarding the title issue and they have confirmed they are actively working to correct the issue." [*Id.*, p. 4].  Plaintiffs then recount their correspondence with SLS.

Plaintiffs complain that their August 16, 2016 correspondence to BOA constituted a "Qualified Written Request" ("QWR") pursuant to RESPA, that BOA failed to timely respond, and further that the Lirettes are entitled to damages as a result.

As noted above, Defendant BOA has not filed its own motion for summary judgment, but it has filed an opposition to Plaintiffs' motion.  BOA contends that Plaintiffs' RESPA claims against it fail for the same reasons asserted by BNY and SLS.  The Court agrees.

First, there is no evidence of any QWR issued by Plaintiffs to BOA that pertains to "servicing" as defined above.  Plaintiffs admittedly requested information pertaining to the purported title issue and a request for additional information. This is insufficient to establish a QWR.

Second, even if the correspondence is classified as a QWR pursuant to statute, Plaintiffs have neither alleged nor established that there was any "pattern or practice of noncompliance with the requires of the section" or that they have sustained, or are entitled, to damages. Plaintiffs' attempt to establish a "pattern or practice" based upon the actions of BOA and SLS, two separate servicers, is unworkable. These are separate entities and separate servicers, and no "pattern or practice" has been alleged or established through competent evidence.

Third, even assuming that a pattern or practice existed as to BOA, Plaintiffs have failed to allege or prove any damages as a result of the alleged violation.

23

Accordingly, Plaintiffs have failed to establish their entitlement to judgment as a matter of law against BOA on their RESPA claim, and Plaintiffs' motion is DENIED.

### d.   Plaintiffs' Claim for Attorney Fees and Costs

Plaintiffs contend they are entitled to an award of attorney fees and costs pursuant to RESPA and because they are entitled to a declaratory judgment rescinding the Modification Agreement.  Defendants respond that it is well settled in Louisiana that attorneys' fees are not allowed except where authorized by statute or contract. Defendants assert that Plaintiffs do not have a viable claim under any statute which would afford them the right to recovery of attorneys' fees, nor is the recovery of attorneys' fees authorized under the Note, Mortgage, or Modification Agreement.

Because the Court has granted Defendants BNY and SLS summary judgment as to Plaintiffs' RESPA claims against them, Plaintiffs are not entitled to an award of attorney fees and costs as to those claims.  Accordingly, Plaintiffs' motion for attorney fees and costs against BNY and SLS on their RESPA claims is DENIED. Similarly, BOA and SLS's motion is GRANTED, and Plaintiffs' claims against those Defendants for attorney fees and costs based on alleged RESPA violations are DISMISSED WITH PREJUDIOCE.

Plaintiffs further contend that, to the extent they prove they are entitled to a declaratory judgment rescinding the Modification Agreement because of Defendants' fraud, they are entitled to an award of attorney fees pursuant to Louisiana Civil Code art. 1958.  ("The party against whom rescission is granted because of fraud is liable for damages and attorney fees.").  Because the Court has denied each side's motions for summary judgment as to Plaintiffs' requests for declaratory judgment, an award of attorney fees is premature, and Plaintiffs' motion is DENIED WITHOUT PREJUDICE.

Additionally, the Court has denied Plaintiffs' motion for summary judgment as to BOA; therefore, Plaintiffs' request for attorney fees and costs as to BOA is premature.  Plaintiffs' motion, as to their claim for attorney fees and costs against BOA, is DENIED WITHOUT PREJUDICE.

### e.    BNY and SLS's Alternative Rule 9(b) Motion

Defendants BNY and SLS asset that Plaintiffs' fraud and fraudulent inducement claims should be dismissed for failure to meet the requirements of Rule 9(b), inasmuch as Plaintiffs have not identified the speaker, stated when and where the alleged fraudulent statements were made, nor explained why the statements were fraudulent. BNY and SLS argue that fraud allegations must meet the stringent pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires parties to "state with particularity the circumstances constituting fraud or mistake." Failure to comply with Rule 9(b) renders a complaint subject to dismissal under Rule 12(b)(6).

Plaintiffs respond that they have made sufficient allegations, that Louisiana is a "fact pleading" state, that they originally filed in state court but Defendants removed to this Court, and that their Petition must be viewed through the lens that it was not originally filed in federal court.

Although Plaintiffs' allegations could have been made in more detail, the Court does not find that BNY and SLS have established sufficient grounds for dismissal on this basis. Accordingly, their motion is DENIED.

## III.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment and, in the Alternative, Motion to Dismiss Fraud Claim Pursuant to Rule 9(b) [Doc. No. 29] is GRANTED IN PART and DENIED IN PART. Further, Plaintiffs' Motion for Summary Judgment [Doc. No. 35] is DENIED.

MONROE, LOUISIANA, this 4th day of February, 2021.


**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**